UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAUL EWERS, et al.,                                            Case No. 1:18-cv-554

    Plaintiffs,                                               Bowman, M.J.

    v.

LOWE'S HOME CENTERS, LLC, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Paul Ewers and his wife Kim filed suit in the Court of Common Pleas for Warren County, Ohio against Lowe's Home Centers (Lowe's) after Mr. Ewers slipped and fell at a Lowe's store located in South Lebanon, Ohio on or about July 31, 2016, suffering serious injuries. Defendant Lowe's properly removed the action to this Court on August 7, 2018 on the basis of diversity jurisdiction.[1] The parties have completed discovery, and trial is scheduled to commence before the undersigned on November 12, 2019.[2]

---

[1] Plaintiffs are residents of the State of Arizona. Defendant Lowe's has its principal place of business in North Carolina, while Defendant Blue Cross Blue Shield of Michigan Mutual Insurance Company ("Blue Cross") is a Michigan Corporation. Although Blue Cross has never appeared, Plaintiffs make clear in their complaint that they have named Blue Cross solely based upon a potential subrogation interest. Ordinarily, all Defendants must consent to removal but in this case, the undersigned agrees with Lowe's that the interests of Blue Cross are those of an intervening Plaintiff and not a Defendant. This Order will direct the Clerk to so note the record. *See Roman v. Barlow*, Case No. 2:12-cv-747, 2012 WL 6594961 at *3 (S.D. Ohio Dec. 18, 2012); *but see U.S. v. Real Property Known and Numbered as 1731-1735 North Fourth Street, Columbus, Ohio*, 2006 WL 3793305 (S.D. Ohio Nov. 21, 2006) (discussing conflicting case law on whether a magistrate judge has the authority to rule in matter in which a putative intervening party had not consented to jurisdiction under 28 U.S.C. § 636(c)).

[2] All *appearing* parties have consented to the disposition of all motions and to trial before the undersigned magistrate judge. See 28 U.S.C. § 636(c). However, an issue remains whether final disposition by the undersigned would be binding on the non-appearing intervening party, Blue Cross. *See Jack Tyler Engineering Co. v. Colfax Corp.*, 2011 WL 384614 (W.D. Tenn. Feb. 3, 2011).

On July 18, 2019, Lowe's filed a motion seeking to exclude Plaintiffs' expert from offering testimony at trial. For the following reasons, Lowe's motion in limine is GRANTED.

**I.    Rule 702 and the *Daubert* Standard for Admissible Opinion Evidence**

Defendant Lowe's seeks to exclude and strike all opinions offered by Plaintiffs' liability expert, Kevin Rider Ph.D., arguing that Dr. Rider's opinions are inadmissible under Rule 702 of the Federal Rules of Evidence, and under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993). Although Defendant requests a formal *Daubert* hearing on the issues presented, a hearing would not assist the Court, as the parties have fully briefed all relevant issues. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 249 (6th Cir. 2001) ("[T]he Supreme Court's decision in *Kumho* makes clear that whether to hold hearing is a question that falls within the trial court's discretion.").

Rule 702, Fed. R. Evid., governs the admission of the testimony of expert witnesses. The first part of Rule 702 defines who is "qualified" to be an expert; namely, any witness that the court deems to be qualified "by knowledge, skill, experience, training, or education…." Neither the Defendant nor this Court quibbles with Dr. Rider's general ability to testify as an expert based upon his training and education. Dr. Rider holds a Bachelor of Science degree in Industrial Engineering, a Master of Science in Industrial Engineering-Human Factors/Ergonomics from the University of Tennessee, and a Ph.D. in Industrial and Operations Engineering-Human Factors-Ergonomics and Biomechanics from the University of Michigan. He is Board Certified in Professional Ergonomics and a member of the National Counsel of Examiners for Engineering and Surveying. His

curriculum vitae indicates membership in various professional societies, and a tenure as a professor at West Virginia University in Industrial Engineering and Safety Management. Dr. Rider is employed as the sole employee of his company, Forensic Human Factors, LLC, and testified that "the vast majority of what I do would be considered litigation support" as an expert witness. (Doc. 13-3 at PageID 145). In fact, Dr. Rider testified that "probably 95 percent of my income is generated in personal or commercial injury or commercial issues as an expert witness or consultant." (Doc. 13-3 at PAGEID 145). In short, Dr. Rider is regularly recognized as an expert witness.

The fact that a witness may be "qualified" to testify as an expert in his field, however, is not the part of Rule 702 under which Defendant seeks to exclude Dr. Rider's testimony. Here, Lowe's argues that Dr. Rider's opinions must be excluded because they do not meet any of the four prerequisites set forth in Rule 702 for admissibility. Under Rule 702, expert testimony will only be admitted if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.*

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 2798 (1993), the Supreme Court explained that Rule 702 requires trial courts to perform a "gatekeeping role." Thus, trial courts are tasked with excluding misleading "junk science" and ensuring that the expert testimony presented to a jury is both relevant and

reliable. *See Rose v. Truck Centers, Inc.*, 388 Fed. Appx. 528, 532-533 (6th Cir. 2010) (internal citations omitted); *see also, generally, Kuhmo Tire Co. V. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999). Although trial courts must follow the requirements of Rule 702 as informed by controlling and persuasive case law, the decision of a trial court to admit or exclude an expert's opinion under *Daubert* remains an exercise of judicial discretion. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244 (6th Cir. 2001).

At issue in this case is what has been described as the "often-elusive line between admissible opinion and inadmissible speculation." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665 (6th Cir. 2010). "It is the proponent of the testimony that must establish its admissibility by a preponderance of proof." *Nelson*, 243 F.3d at 251 (citing *Daubert*, 509 U.S. at 592 n.10). Examining Dr. Rider's proffered opinions in the context of all relevant factors, the undersigned agrees with Lowe's that Dr. Rider's opinions should be excluded in their entirety because his testimony will not help the jury to understand the evidence or the critical facts in issue, and is not sufficiently reliable.

### A. Dr. Rider's Testimony Would Not Assist the Trier of Fact

The undisputed facts confirm that this slip and fall case is a straightforward one. On a bright, sunshiny day in July 2016, Plaintiff Paul Ewers drove to a Lowe's home improvement store in South Lebanon, Ohio in order to exchange an empty propane tank for a full one. After paying for his purchase, Plaintiff followed a store employee back outside Lowe's to a row of locked cages where the new tanks were stored. Adjacent to the same area, close to the parking lot, was a display row of lawn mower equipment. Lowe's had secured the equipment with a cable attached to a cement post in front of the store. After receiving his new propane tank, Plaintiff turned to walk in between two

4

secured pieces of equipment toward his parked car and tripped on the cable, sustaining injury.

Based on that uncontested basic fact pattern, the undersigned concludes that expert testimony is not necessary or helpful. "Jurors do not leave their knowledge of the world behind when they enter a courtroom and they do not need to have the obvious spelled out in painstaking detail." *Dawson v. Delaware*, 503 U.S. 159, 171, 112 S. Ct. 1093 (1992).

Dr. Rider intends to offer the following purportedly "scientific" opinions at trial:

1. The presence of the cable was a violation of pedestrian expectations and contributed to Mr. Ewer's [sic] fall.

2. Mr. Ewers['s] failure to detect the presence of the cable is consistent with established visual scanning behaviors while walking and was not a cause of his fall.

3. The lack of contrast between the incident cable and concrete inhibited Mr. Ewers's ability to detect the cable.

4. Mr. Ewer's focused attention on the oncoming vehicle task predictably inhibited his ability to detect the inconspicuous cable on the ground.

5. Lowe's failure to prevent a tripping hazard from existing in a pedestrian path created a dangerous condition that contributed to Mr. Ewers's fall.

6. The unexpected presence of the cable, the proximity of the cable to the open cage door and lawn mowers, the lack of contrast between the cable and concrete, and insufficient time for Mr. Ewers to detect the presence of the cable, and the approaching vehicle as Mr. Ewers turned to walk to the parking lot all contributed to Mr. Ewers's fall.

(Doc. 14-3 at 42, PageID 369).

Close examination of Dr. Rider's testimony reveals relatively little "scientific method" or other indicia of reliability to support his opinions. However, separate from the issue of reliability is the more obvious question concerning the degree to which his

5

testimony would actually benefit the jury in its understanding of the evidence or to determine a fact in issue. Rather than providing assistance in a case in which the factual issues are complex, such as in a car crash case involving skid marks requiring mathematical calculations and reconstruction techniques, or a case in which a jury is called to determine whether exposure to a chemical caused a particular disease, Dr. Rider offers to enlighten the jury on such mundane principles as "pedestrian expectations" and "visual scanning behaviors while walking." Such testimony is - at best - superfluous and wholly unnecessary. The jurors are expected to possess sufficient practical knowledge of the world around them to understand the basic functions of walking and visual attention or inattention while walking, and do not require expert testimony to evaluate the credibility of Plaintiff's testimony and/or to apply the law to the facts presented to them.[3]

Many of the opinions offered by Dr. Rider are framed as legal conclusions based upon Plaintiff's testimony that he did not observe the cable before tripping on it. Dr. Rider explained that he based such opinions upon his own interpretation of Ohio's law concerning an "open and obvious" danger. "An open and obvious hazard doesn't matter if *you* saw it yesterday, necessarily, if it's hidden, *unrelated to what you're doing*…." (*Id.*, Depo. at 46, PageID 155, emphasis added). But Dr. Rider's understanding of "open and obvious" based upon the subjective experience of the Plaintiff[4] does not fully comport with Ohio law and carries with it a significant risk of jury confusion. Dr. Rider testified that other opinions were informed by his understanding of Ohio's law on "attendant

---

[3] *See, e.g.*, PageID 154, Depo. at 45, testimony that equipment "certainly would have been in [Plaintiff's] visual field," even though "he didn't see any cabling or the power equipment despite it being there. That is not a failure on his part whether it was unrelated to what he was doing" because "his attention wasn't on it. This is classic visual scanning and attention."

[4] *See* Depo. at 43, PageID 154: "[M]y analysis is based on his expectations that he's testified," including testimony that Plaintiff had experienced "43 years of not seeing cabling securing out power equipment."

6

circumstances," a concept explained to him by Plaintiff's counsel.[5] (*Id.* at 51, PageID 156). Dr. Rider's legal conclusions are clearly inappropriate.  *See DeMerrell v. City of Cheboygan*, 206 Fed. Appx. 418, 426-427 (6th Cir. 2006); *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994); *Alvarado v. Oakland County*, 809 F. Supp.2d 680, 687-688 (E.D. Mich. 2011) (discussing cases and holding that expert opinions must stop short of framing the ultimate legal conclusion which the jury must reach).

Multiple courts have concluded that, at least in the context of straightforward slip and fall cases such as this one, expert testimony is not necessary or helpful under *Daubert* principles of "helpfulness," relevance, or "fit."  *See generally Buckner v. Sam's Club*, 75 F.3d 290 (7th Cir. 1996) (expert affidavit merely constituted "simple common sense" and "provided no scientific or technical knowledge that would assist the trier of fact."). In fact, similar testimony by Dr. Rider has been excluded by other courts. For example, in a case involving a slip and fall while walking over a raised threshold on a cruise ship that had been covered with a mat, a Florida district judge wrote extensively about the lack of helpfulness of Dr. Rider's opinions, which were similar to those presented in this case:

> The only clouds darkening the clear waters of this case are the attempts to introduce expert testimony…. This testimony unnecessarily complicates the case.
>
> Walking. That is the action at the heart of this case. Walking is something almost all individuals understand. Rider derives numerous conclusions from his analysis of the carpet, all to say that Plaintiff tripped because of a condition on the ground…. His report states, "[W]hen walkways are improperly designed and maintained, pedestrians may be exposed to

---

[5] Dr. Rider also refers to Plaintiff's subjective experience as "attendant circumstances," which does not necessarily fully agree with Ohio law.  "I forget [counsel's] exact definition, but, basically, there are specific issues at this moment or near it that basically caused the fall, like the car coming by, like the four things I've laid out here." (*Id.*, Depo. at 51-52, PageID 156; *see also id.* at 47 (citing to Plaintiff's subjective experience of failing to observe or expect merchandise to secured by a cable in front of a home improvement store).

7

dangerous conditions." *Id.* at 6. This is not the kind of assertion which requires expert testimony; it is neither a stretch nor even a hop of logic to say that humans may trip if they encounter an obstacle in their path. Jurors can easily understand the simple mechanics of walking and the various reasons one may fall, including tripping on a carpet.

People other than Plaintiff's proposed expert also frequently encounter changes in lighting. Rider writes in his report, "[W]hen people encounter significant differences in the amount of light from one area to another, the eyes require time to fully adjust to the change in illumination." … He concludes that "the change in brightness between the interior and exterior of the doorway inhibited Ms. Torres' ability to detect and identify the trip hazard." *Id.* at 11. …An expert is neither necessary nor helpful for this fact. Changes in brightness are encountered everyday by all individuals fortunate enough to have eyesight. This understanding of the human eye's basic reactions to changes in light is innate to having eyesight. The Court is skeptical why an expert would ever testify to such evidence.

Rider also opines on the efficacy of Defendant's warnings…. He states, "The caution cones used near the incident doorway do not effectively alert a pedestrian to the unexpected trip hazard of the carpet." *Id.* at 13. There is no specialized knowledge needed to look at cones and asses their ability to warn. An average lay person can listen to lay testimony about placement, color, size, etc. of cones and decide whether a warning was appropriate or not. Rider is not assisting the jury understand matters which they would not otherwise comprehend.

Rider has no greater and no less experience than the general public in the matters relevant to this case. ... A jury can determine quite well for itself how the Defendant acted in this case and what relationship, if any, those actions have to Plaintiff's injuries. All of the issues to which Rider would testify are well within the understanding of the average lay person. To permit expert testimony on issues where the jury can easily form an opinion would be to invade the province of the jury. The Court believes the jury is a capable and competent, and should be respected as such. Expert testimony is not helpful on issues this astute body can understand.

At best, Rider's testimony would be superfluous. At worst, the testimony would confuse the jurors. Expert testimony inherently has a "powerful and potentially misleading effect." … "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id.* Rider's testimony would needlessly complicate a simple case. The substantial risk of confusing the jury and wasting time meets the criteria set forth in Federal Rule of Evidence 403 for excluding the evidence.

> The testimony is best excluded at this juncture and not left to a "weight of the evidence" argument at trial…. This is a run-around on the Court's gatekeeping function. The district courts are required to determine competency, helpfulness, and reliability of the proposed expert. Facts calling into question any of the three prongs are not arguments over persuasiveness but are disputes the Court is required to address in the first instance. It would make the exception swallow the rule if, in cases like this, the "weight of the evidence" argument won out over the clear law requiring the Court to be a gatekeeper and the jury's fundamental role to the American legal process.

*Torres v. Carnival Corp.*, 2014 WL 3548456, at *2-3 (S.D. Fla 2014). The *Torres* court further explained that Dr. Rider's opinions failed the "reliability" test under *Daubert*, and subsequently granted summary judgment to the Defendant cruise shop.

On appeal, the Eleventh Circuit affirmed the trial court's exercise of discretion to exclude Dr. Rider's opinions, as well as the grant of summary judgment. With respect to the issue of "helpfulness," the Court of Appeals wrote:

> The judge …reasonably determined Rider's testimony would not be helpful to the jury. Rider's testimony regarding walking and the efficacy of different types of warnings can be understood easily and evaluated by jurors. *See Evans v. Mathis Funeral Home, Inc.,* 996 F.2d 266, 268 (11th Cir.1993) (affirming exclusion of expert testimony regarding the causes of plaintiff-appellant's fall, because they were "within the common knowledge of the jurors, and thus the probative value of such testimony was outweighed by the danger of prejudice" (citing Federal Rule of Evidence 403)).

*Torres v. Carnival Corp.*, 635 Fed. Appx. 595, 600 (11th Cir. Nov. 20, 2015). So too here, notwithstanding the use of "scientific" phrases such as "pedestrian expectations" and "visual scanning," walking with one's eyes open is an activity that falls within the purview of a juror's common experience.

Plaintiff argues that *Torres* is distinguishable because there, the trial court found that Dr. Rider's opinion that a change in brightness contributed to the plaintiff's fall was in

9

contrast to the plaintiff's testimony. It is true that the trial court pointed out that discrepancy, as did the appellate court. However, as is evident from the lengthy quotations set forth above, the factual discrepancy played a minor role in the court's decision. In other words, the fact that Dr. Rider's opinions agree with the Plaintiff's testimony in this case does not make them more relevant or reliable.

In *Pickens v. Wal-Mart Stores East, LP*, 2015 WL 4997064 (N.D. Ind. Aug. 20, 2015), Dr. Rider's opinions also were excluded. There, the plaintiff was walking toward the main aisle of a large retail store when his foot hit the corner of a display skid containing boxes of above-ground pools, causing him to trip and fall. Dr. Rider's opinions in *Pickens* closely resemble those offered here. Based on his expert qualifications and training as well as his review of the plaintiff's testimony, the discovery in that case, and various safety manuals and treatises about human factors, Dr. Rider offered the following:

> (1) Mr. Pickens had a reasonable expectation of a safe and unobstructed walking surface.
>
> (2) Walmart's failure to provide a safe walking path for guests, such as Mr. Pickens, violated his reasonable expectation.
>
> (3) Had [Wal–Mart] complied with national standards and design guidelines for walkway design and maintenance by eliminating the trip hazard, Mr. Pickens would not have fallen.
>
> (4) Mr. Pickens's actions were reasonable and foreseeable, and were not a cause of his fall.

Id., at *2.

As in *Torres*, the *Pickens* Court excluded Dr. Rider's opinions because they would not be helpful to assist the jury:

> The Court concludes Dr. Rider's opinions will not assist the jury. Fed.R.Evid. 702 requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is unnecessary

10

if "the subject matter of the testimony is clearly within the average person's grasp." *Sommerfield v. City of Chicago,* 254 F.R.D. 317, 329 (N.D.Ill. 2008) (citing *Gil v. Reed,* 381 F.3d 649, 659 (7th Cir. 2004)). "Jurors do not leave their knowledge of the world behind when they enter a courtroom and they do not need to have the obvious spelled out in painstaking detail." *Dawson v. Delaware,* 503 U.S. 159, 171, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992).

The jurors on Plaintiffs' jury would be familiar with - if not well versed in - the realities and circumstances of shopping at a large retail store. Many, perhaps all, will have shopped at a Wal–Mart store or similar large stores. They will have encountered displays and will likely have had first-hand experience with retail sales techniques. As such, the jurors will be fully equipped to listen to testimony and review visual evidence to reach their own opinions about Mr. Pickens's expectations and the ultimate cause of his fall.

Moreover, the facts in this case are not complicated. Being exposed to display skids at a large retail store is a common experience that does not require specialized knowledge to analyze. In fact, Dr. Rider's testimony, which amounts largely to legally determinative conclusions, could actually confuse the jury unnecessarily. Therefore, the Court must exclude Dr. Rider's expert testimony because it does not meet the requirements set forth in Fed.R.Evid. 702.

*Id.*, at **2-3.

*Torres* and *Pickens* are persuasive in the case presented concerning the "helpfulness" of Dr. Rider's proffered testimony. *See also, generally*, *Kough v. Wing Enterprises, Inc.*, 2015 WL 164609 (E.D. Tenn. Jan. 8, 2015) (excluding human factors expert's proffered testimony regarding consumer expectations, because it was not the type of testimony that would assist the jury and was prepared solely for litigation); *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 43 Tex.Sup. Ct. J. 1002 (Tex. 2000) (affirming trial court's exclusion of human factors and safety expert where jury could view photographs and draw its own conclusions, expert's opinions concerned ultimate issues of store's negligence, and other opinions were within average juror's common knowledge); *Anderson v. Home Depot*, 2017 WL 2189508 at *5 (D. Md. May 16, 2017)(excluding

opinion as unhelpful because it simply drew "common-sense conclusions that jurors were equally qualified to make, and there was no fact in issue begging for an expert's explanation, collecting cases); *Alzubaidi v. Wal-mart Stores, Inc.*, 1991 WL 99423 (E.D. La. 1991) (excluding safety expert's testimony that slip and fall occurred as a result of lack of proper procedures by store to maintain safe walking conditions for their customers, because case presented was "a typical slip and fall case about which the ordinary jury is competent to decide…without need of an expert.")

It is worth noting that Dr. Rider's testimony also has been excluded in at least one case that is factually distinguishable from the garden variety "slip and fall" fact pattern illustrated here. Despite factual distinctions, the reasoning employed rings true. *See e.g. DeJesus v. Knight Indus. & Assoc., Inc.*, 2016 WL 1555793 (E.D. Pa. April 18, 2016) (affirming exclusion of Rider on reconsideration after remand from the Third Circuit on other grounds, because Rider's testimony was based on facts not in the record, because he relied on an academic source without attempting to replicate the environment at the time of the accident, and because his opinion was based on speculation and unreliable methods, concurring with prior judicial determination at 2013 WL 3833247 at *4 (E.D. Pa July 25, 2013) (excluding Dr. Rider's opinion that lift table was defectively designed and manufactured because opinions were not based on scientific method or procedure, and "Dr. Rider's assertion and citation to an academic source do not constitute a reliable methodology"); *but see Mascari v. Bordentown Regional H.S.*, 2018 WL 548561 (N.J. Dec. 19, 2017) (reversing and remanding exclusion of Dr. Rider for a hearing under state law, because New Jersey Rule 702 is more liberal than the *Daubert* standard, while clarifying that during a full hearing, the parties could explore "all legally recognized

grounds for precluding Dr. Rider's opinion as inadmissible.") and *contrast Estate of Arama v. Winfield*, 2017 WL 1951462 at *8 (N.D. In. May 11, 2017) (declining to exclude Rider opinions in motorcycle crash case, because "while the mathematical calculations Rider performed may not be overly complex, the conclusions rendered thereon are not within the knowledge of men of ordinary experience and they will assist the jury in making a decision on the issue of liability.").

In a memorandum in opposition to Defendant's motion to exclude Dr. Rider, Plaintiffs argue:

> Dr. Rider's testimony supports and scientifically deciphers why the Plaintiff [Paul Ewers] (1) did not see the cables as he approached the front of the store, because as a reasonable person in this situation he was focused on the door and because he did not traverse the cables; (2) that when he went from the door to the propane cages, he did not see the cable because he was focused on following the cashier; and (3) when he left the cashier he did not see the cables because his attention was focused on maneuvering past the open cage door which was in his way with the new thank [sic] in hand, which concealed the cable from his view.

(Doc. 17 at 8). For the reasons discussed, Plaintiffs' argument in favor of the "helpfulness" of this testimony is wholly unpersuasive. The jury does not require expert testimony on any of these issues.

Plaintiffs' memorandum in opposition also cites two cases to support their assertion that other courts have admitted human factors' expert opinions to assist the jury in cases in which the central issue is whether a danger is "open and obvious." Leaving aside that the "open and obvious" determination is generally a legal issue for the court rather than a factual determination for a jury under Ohio law,[6] neither of the cited cases

---

[6] Plaintiffs concede that in general, whether a danger is open and obvious is a question of law in Ohio. However, Plaintiffs cite to the unpublished Ohio Court of Appeals decision in *Ray v. Wal-Mart Stores*, 2009 WL 2783231 (Ohio Ct. App. Aug. 25, 2009) to argue that, on the facts presented here, whether the cable securing the lawnmowers was "open and obvious" should be presented to the jury. *Ray* did not concern

13

is persuasive. The first case on which Plaintiff relies, *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052 (4th Cir. 1986), is both outside the Sixth Circuit and was decided pre-*Daubert*. Moreover, the case simply does not support the admission of Dr. Rider's testimony. In *Scott*, the appellate court reversed and remanded after finding prejudicial error based on the admission of human factors expert testimony, despite concluding that the admission of one of the expert's opinions reflected only "harmless error," and that the admission of another opinion fell within the court's discretion.

The second case on which Plaintiffs rely, *Daves v. Morgan Tire & Auto, Inc.*, 2009 WL 5126579 (W.D. Ky. Dec. 18, 2009), also fails to persuade this Court that Dr. Rider's opinions would be helpful.[7] In *Daves*, the trial court allowed a safety engineering and human factors expert to testify about the lack of adequate inspection of a tire store's public restroom. The same expert was permitted to testify that spill hazards are difficult to see, especially when they do not differ significantly from the surrounding floor surface in texture, color or luminance. It does not appear that the tire store appealed the evidentiary ruling. Despite the undersigned's belief that such testimony could have been excluded, the nature of a discretionary *Daubert* ruling means that different courts may reach different conclusions. For the reasons discussed above, including but not limited to the greater weight of case law cited *infra*, the undersigned remains firmly convinced that Dr. Rider's testimony must be excluded here.

---

the admission of expert testimony, and does not undermine the conclusion that Dr. Rider's testimony is neither helpful to the jury nor reliable on the record presented. *See also Goodson v. Millennium v. Copthorne Hotels, PLC*, 2015 WL 74271 (S.D. Ohio Jan. 6, 2015) (granting summary judgment, holding that plaintiffs "cannot transform an otherwise open-and-obvious condition into a dangerous hazard through the opinion of an expert.") (citing *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 83, 788 N.E.2d 1088 (2003)).

[7] Plaintiffs' memorandum mistakenly cites to an unrelated ruling from *Daves* issued on July 19, 2010. *See id.*, 2010 WL 2858667.

### B. Dr. Rider's Opinions Are Not Reliable

"A district court is not required to admit expert testimony "that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Nelson*, 243 F.3d at 254 (quoting *General Elec Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Both the Supreme Court in *Daubert* and *Kuhmo Tire* and subsequent Sixth Circuit case law emphasize that the reliability inquiry is a flexible one. *See Nelson*, 243 F.3d at 251. Here, Dr. Rider's opinions suffer from multiple "reliability" weaknesses, including: (1) the lack of evidence that Dr. Rider's "methodology" in this case is common in the professional or scientific community; (2) overreliance on Plaintiff's subjective testimony as a basis for allegedly "objective" findings; (3) the lack of any testing or replication of circumstances; *i.e.*, an absence of investigation or precise studies of the subject store, vehicular or foot traffic, or measurements of the cable or of any other objects; (4) the fact that the opinions were obtained for this litigation by an expert who, in slip and fall cases, testifies overwhelmingly in favor of plaintiffs;[8] (5) the fact that the opinions appear to be result-oriented legal conclusions rather than scientific findings of fact. *See, e.g., Pickens*, 2015 WL 4997064 at *3 (excluding as unreliable similar opinions by Dr. Rider that provided ultimate conclusions without analysis, where substantial analytical gaps existed between the data Dr. Rider allegedly relied upon and the opinions themselves); *DeJesus*, 2016

---

[8] Dr. Rider testified that he primarily provides testimony in automobile/trucking cases, with approximately 30% of his work spent on premises liability (i.e., slip and fall) cases. He further testified that more than 70% of his work in such cases is performed on behalf of plaintiffs, but that his automobile cases reflect a more even split. (*Id.* at 147 (Tr. 14). Dr. Rider's Rule 26(f) report lists 61 cases over the past four years, with 82% of those cases on behalf of plaintiffs. The Sixth Circuit has approved consideration, in the context of a *Daubert* "reliability" determination, of whether an expert's opinions have been formed for the express purpose of litigation. *Nelson*, at 252 (""[C]lose judicial analysis of expert testimony is necessary 'because expert witnesses are not necessarily always unbiased scientists,'" quoting *Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1352 (6th Cir. 1992)).

WL 1555793 at *6 (affirming exclusion of Dr. Rider's opinions based upon speculation and the unreliability of his methods); *id.*, 2013 WL 3833247 at **4-5 (same); *Torres*, 2014 WL 3548456 at *4 (describing Dr. Rider's methodology in slip and fall case as "questionable" because he never investigated the subject vessel and felt it was unnecessary to do so, noting entire analysis in absence of first-hand investigation made the "relationship between Rider's findings and Plaintiff's fall a long-distance one."); *Torres*, 635 Fed. Appx. at 600 (affirming exclusion of Rider's conclusions as misleading, speculative, and unreliable); *Anderson v. Home Depot*, 2017 WL 2189508 at *5 (excluding opinion that retail store did not properly install a "stable" display as not based on sufficiently reliable reasoning or methodology where opinion was based on expert's training as a "certified safety expert" who relied on the "National Safety Council Accident Prevention Manual" because the manual did not establish any principles or methods against which an expert can assess the particular retail display).

Plaintiffs argue that the Sixth Circuit has held that any weakness in the underlying factual basis for an expert's opinions bears on the weight as opposed to the admissibility of the evidence. That point is valid only as a general principle; Plaintiffs cannot invoke it as a mantra to completely escape the gatekeeping function established by Rule 702 and *Daubert*. Notably, the Sixth Circuit case cited by Plaintiffs involved much different facts, including intricate calculations and uses of data sets. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 527-530 (6th Cir. 2008) (affirming discretionary decision that permitted economist to testify about his complex calculation of damages in Sherman Act class action, despite challenges to his data sets and assumptions as "garbage in, garbage

16

out," because the expert "provided reasoned explanations for the assumptions that he made and …viable arguments to support his data set choices.").

II.     **Conclusion and Order**

For the reasons discussed above, **IT IS ORDERED**:

1. The Clerk shall amend the docket to reflect that Blue Cross Blue Shield is named as an intervening Plaintiff rather than a Defendant;

2. Defendant Lowe's motion to exclude the testimony and to strike the opinions of Dr. Rider (Doc. 14) is **GRANTED**. Dr. Rider's opinions will be excluded from further consideration by this Court or by a jury, should this case proceed to trial;

3. For reasons of judicial economy, the Court will stay ruling on the pending motion for summary judgment until after the conclusion of the scheduled mediation before Magistrate Judge Karen Litkovitz. A prompt ruling will follow the conclusion of the mediation.

  _s/ Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge