UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAUL EWERS, et al.,                                    Case No. 1:18-cv-554

    Plaintiffs,                                        Bowman, M.J.

        v.

LOWE'S HOME CENTERS, LLC, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Paul Ewers and his wife Kim filed suit in the Court of Common Pleas for Warren County, Ohio against Lowe's Home Centers (Lowe's) after Mr. Ewers slipped and fell at a Lowe's store located in South Lebanon, Ohio on or about July 31, 2016, suffering serious injuries. Defendant Lowe's properly removed the action to this Court on August 7, 2018 on the basis of diversity jurisdiction.[1] Following the completion of discovery, Defendants moved for summary judgment.[2] For the following reasons, Lowe's motion for summary judgment is granted.

**I.    Summary Judgment Standard**

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the

---

[1] Plaintiffs are residents of the State of Arizona, and originally identified both Lowes and a health insurance company as Defendants. Defendant Lowe's has its principal place of business in North Carolina, while Blue Cross Blue Shield of Michigan Mutual Insurance Company ("Blue Cross") is a Michigan corporation. Although Blue Cross has never appeared, Plaintiffs' complaint makes clear that Blue Cross is named solely for its potential subrogation interest. Ordinarily, all Defendants must consent to removal, but this Court previously held that Blue Cross is technically an intervening Plaintiff. (Doc. 26 at n.1).

[2] All *appearing* parties have consented to the disposition of this case before the undersigned magistrate judge. See 28 U.S.C. § 636(c). However, an issue remains whether final disposition would be binding on the non-appearing intervening party, Blue Cross. *See, e.g., Jack Tyler Engineering Co. v. Colfax Corp.*, 2011 WL 384614 (W.D. Tenn. Feb. 3, 2011).

nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen– Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505 (1986). The non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251–52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In this case, the evidence of record leaves no doubt that Lowe's is entitled to judgment as a matter of law.

## II. Findings of Fact

A picture is worth a thousand words. And in this straightforward slip-and-fall case, several pictures display the undisputed facts of this case far better than the undersigned can put into words. Nevertheless, the undersigned will attempt to articulate the facts upon which both parties agree, as well as the facts on which some disagreement exists, drawing all reasonable inferences in favor of the Plaintiffs.

At approximately 7:30 p.m. on Sunday, July 31, 2016, Plaintiff Paul Ewers[3] and his wife, Plaintiff Kim Ewers, went to the Lowe's retail store in South Lebanon, Ohio (the "Store") to exchange a propane tank. The Store is what is commonly known as a "big box" retail home improvement and hardware store. Paul had visited the Store on three (3) previous occasions to exchange propane tanks, but typically visited the Store once per month for other purposes. At the time that Plaintiff visited the Store on this date, it was still a bright "sunshiny" day. (Doc. 13-1, Paul Ewers Dep. at 16:10-13).

Plaintiff exited his vehicle and walked toward the Store's automatic exit door carrying his empty propane tank. Lining the wall of the Store to the left of the exit door (when facing the Store) was a row of Blue Rhino cages in which propane tanks were

---

[3] Although both Paul Ewers and his wife are plaintiffs in this case, the Court uses the singular "Plaintiff" to refer only to Paul Ewers.

3

stored.  In front of those cages, closer to the parking lot, was a row of large and expensive power equipment, such as riding lawnmowers and tillers, secured by a security cable to a concrete pillar flanking the exit door.  The security cable lay on the ground on top of the concrete and appeared to be a "dirty" color[4] but was visible.  Although there was nothing to obscure his vision and the equipment and cable were in plain sight,[5] Plaintiff does not "recall" seeing any of the power equipment on display in front of the Store either as he approached the Store or at any other time until just prior to his fall on that particular day.[6]  (Doc. 13-1, 40:13-18, 42:13-15).  However, he admitted that "it's common during the summer to see power equipment parked outside of a Lowe's store," even though he had never observed that such equipment was secured by a cable.  (*Id.*, 55: 3-10).

When he reached the front of the store, Plaintiff turned left near the large concrete support pillar and walked approximately 15 feet along the sidewalk fronting the Store in order to place his empty propane tank next to the row of Blue Rhino cages.  At this point, Plaintiff's walking path was between the power equipment and propane cages, with the power equipment on his left (closer to the parking lot), and the propane cages toward his right (against the Store wall).  In the areas where the closed propane tank cages and lawn mowers were directly across from each other, the width of the

---

[4] Paul testified that the cable was more of a "dirty brown" color, while other witnesses testified it was yellow.  Although the yellow hue appears to be plainly visible, the dispute over the precise color is immaterial, as discussed below.
[5] Paul testified that he did not have an entirely clear view of the front of the store from his parking space, due to the existence of a parking median and some bushes.  (Doc. 13-1 at 22:1-4 and Ex. A).  However, photographs clearly show that the median is at ground level, with small bushes no taller than the height of a car door.  In other words, although Paul's view of the equipment may have been obscured when he was seated in his car, it was not once he exited his vehicle and began walking toward the Store.
[6] Paul's deposition testimony was somewhat equivocal, as he also implied in his testimony that his recollection of whether he had seen the power equipment on the date of the incident more than two years earlier was made more difficult by the passage of time.  (Doc. 13-1 at 57: 19-25).

4

pathway narrowed to approximately 3-3 ½ feet.[7] As he walked along this concrete path, which was directly across from his parked car, Plaintiff walked next to some of the power equipment secured by the cable. Unsurprisingly given that he did not recall seeing the equipment, he also did not observe the cable, explaining that as he carried his empty tank toward the cages, his "focus was on the cage." (*Id.* at 44:11-25).

After setting down the empty tank next to the cages, Plaintiff walked back past the power equipment a second time (now on his right) and turned and entered the Store's automatic exit door in order to pay for a fresh propane tank. After processing Plaintiff's payment, Lowe's Cashier Stevie Stanforth proceeded back through the exit door and immediately turned right before the pillar, traversing the same concrete path that Plaintiff had previously twice walked, along the front of the building. Plaintiff followed "immediately behind" Stanforth, and again did not recall seeing the large equipment on his left or the cable that secured it. As he moved between the power equipment and the propane cages, nothing obstructed his ability to see the power equipment or the cable that secured it. (*Id.* at 50:5-20).

Stanforth unlocked and opened one of the propane tank cages on the right, removed a full tank, and gave it to Plaintiff. At that point, Plaintiff turned around and took a few steps around the open propane cage door to begin walking back again along the same path toward the concrete support pillar and the Store's exit door.[8] However, rather than continuing to walk the full 15 feet to the front of the exit door, Plaintiff turned

---

[7] Plaintiff attached excerpts from depositions of two Lowe's employees to support this finding of fact. Although neither of the referenced transcripts refer to any such measurement, Lowe's does not dispute the estimated measurement and the photographic evidence appears to be consistent. (Doc.18-2 at 6).
[8] When the propane cage door was fully extended, Stanforth estimated that distance between the edge of the door and the lawnmower was reduced to 6-12 inches, which "wouldn't be enough space for a person to walk through…." without pushing the door out of the way. (Doc. 13-2, Stanforth Dep. 19:9-14). However, the Court gives the benefit of the doubt to Plaintiff that he was able to walk around the door.

5

to his right just before reaching the support pillar. In choosing this shorter path toward the parking lot, Plaintiff elected to walk between two pieces of large equipment. Plaintiff testified that he noticed the equipment only after turning right. (Doc. 13-1 at 62:9-19). He testified that his focus was on a nearby car traveling in the adjacent parking lot. (Doc. 13-1 at 68:13, 69:1-3, 70:17 and 72:19). Failing to see the security cable on the ground that ran between and joined all of the equipment to the support pillar, he tripped over the cable and fell. Stanforth heard his fall as she was still in the process of securing the empty tank in one of the cages.

### III. Analysis

In order to prevail, Plaintiffs must establish that: (1) Lowe's owed Paul Ewers a duty of care; (2) Lowe's breached that duty; and (3) as a direct and proximate result of its breach, Plaintiffs sustained injuries. *See Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 122, 909 N.E.2d 120, 122-123 (2009). In this case, Plaintiff was a business invitee. Lowe's had a duty to exercise ordinary care and maintain its premises in a safe condition. *Id.* at 123, 900 N.E.2d at 123 (additional citations omitted). "However, a premises owner is not an insurer of its invitees' safety against all forms of accidents that may happen." *Armstrong v. Lakes Golf and Country Club, Inc.*, 98 N.E.3d 328, 334 (Ohio App. 2018). (internal citation omitted).

#### A. Ohio's Open and Obvious Doctrine

Because it is not an insurer, a premises owner's duty of care does not include a duty to warn of any "open and obvious" dangers inside the store. *See Sidle v. Humphrey*, 13 Ohio St.2d 45 at ¶1, 233 N.E.2d 589 (1968). A danger that is readily "observable" is deemed to be "open and obvious." *See Beach v. Wal-Mart Stores E.,*

6

*Inc.*, 2016 WL 7223392 at *2 (S.D. Ohio Dec. 13, 2016) (citing *Lydic v. Lowe's Cos., Inc.*, 2002 WL 31111820 at *2 (Ohio App. Sept. 24, 2002)). A danger that is open and obvious eliminates the duty to warn and acts as a complete bar to recovery. *Armstrong v. Best Buy*, 99 Ohio St.2d 79, 788 N.E.2d 1088 (Ohio App. 2003). When a danger is open and obvious, a premises owner may reasonably expect its patrons to discover the hazard and take appropriate measures to protect themselves. *See Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504, 506 (1992). When a plaintiff claims injury from a danger that a court determines to have been open and obvious, summary judgment is appropriate because the premises owner has no duty. *See Armstrong*, 99 Ohio St.3d 79, at ¶15.

"The law uses an objective, not subjective, standard when determining whether a danger is open and obvious." *Lakes Golf and Country Club*, 98 N.E.3d at 335. "The determinative issue is whether the condition is observable" by an "objective, reasonable person." *Id.* Thus, "even in cases where a plaintiff did not actually see the hazard until after he or she fell, no duty exists where the plaintiff "could have seen the condition if he or she had looked." *Beach*, 2016 WL 7223392 at *2 (quoting *Lydic v. Lowe's Cos., Inc.*, 2002 WL 31111820 at *2 (Ohio App. Sept. 24, 2002)). "A pedestrian's failure to avoid an obstruction because he or she did not look down is no excuse." *See Lydic*, at *2 (citing *Jeswald v. Hutt*, 15 Ohio St.2d 224, 239 N.E.2d 37 (1968)). In short, the "open and obvious" test is not concerned with a plaintiff's subjective perception of the danger, or lack thereof. *See also Strevel v. Fresh Encounter, Inc.*, 2015 WL 7777233 at *4 (Ohio App. Nov. 24, 2015).

Lowe's argues that it owed no legal duty to Plaintiffs, because the cable securing the lawnmowers was open and obvious. Under Ohio law, the determination of whether a danger is open and obvious is typically resolved by a trial court prior to trial. The issue is *usually* one of law because it concerns the determination of whether a legal duty exists. Like most rules of law, however, there is an exception to this one. Thus, when a danger otherwise appears to be "open and obvious" a legal duty *may* arise if there are "attendant circumstances" created by the defendant that are so predictable and distracting that the duty of the reasonable pedestrian to observe his surroundings is reduced, resulting in a danger that is not so "open and obvious" after all.

In opposition to summary judgment, Plaintiffs make two arguments. First, Plaintiffs argue that the cable was not an open and obvious danger because it was not readily observable. Plaintiffs rely heavily on *Ray v. Walmart Stores, Inc.*, 2009 WL 2783231 (Ohio App. 2009), in which an Ohio appellate court reversed the grant of summary judgment after noting that the application of the doctrine is "highly fact-specific." In that case, the plaintiff had tripped over a black produce crate that partially protruded into the shopping aisle from underneath a table displaying corn in the grocery section of a store. Plaintiffs argue that as in *Ray*, the instant case presents a genuine issue of fact for a jury to review. "Where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine." *Id*. at 6, ¶29. Plaintiffs also contend that attendant circumstances preclude summary judgment in this case. However, neither the factual record nor Ohio law support Plaintiffs' arguments.

First, Plaintiffs' reliance on *Ray v. Walmart Stores, Inc.* is misplaced. In that case, there was no photographic evidence, and the deposition testimony was sufficiently in conflict to create an issue of fact. Here, by contrast, the evidence presented leaves no "reasonable" doubt as to whether the cable was open and obvious. If "only one conclusion can be drawn from the established facts…the issue of whether a risk was open and obvious may be decided by the court as a matter of law." *Headley v. Home Depot U.S.A., Inc.*, 2014 WL 3349592, at *4 (N.D. Ohio 2014) (quoting *Klauss v. Glassman,* No. 84799, 2005 WL 678984, at *3 (Ohio App. Mar. 24, 2005)). Plaintiff cannot create an issue of fact merely by relying upon his subjective testimony that he did not notice or observe the cable, because all other evidence of record (including photographs) confirms that the security cable was readily observable and therefore was open and obvious.

In a response in opposition to judgment, Plaintiffs argue vigorously that the cable was "obscured from view by its location, color and position near all the other equipment." (Doc. 19 at 4). However, the photographic evidence utterly refutes that argument. As Lowe's points out, the photographs demonstrate unequivocally that the cable was "open and obvious" in that it would have been readily observable to anyone in the vicinity. Photographs taken right after the accident occurred show that the cable color contrasts markedly with the surrounding light-gray concrete on which it lies, despite being a "dirty" yellow color. (*See* Doc. 13-1, Ex. A-B). Even the picture taken weeks later by Plaintiff shows the same power equipment, along with the propane cages behind them, and the cable securing the equipment to the pillar.

The cable at issue appears to be of a relatively heavy weight, as one would expect for a security cable intended to preserve valuable power equipment at a home improvement store, as opposed to a tiny thread or thin wire that might be more difficult to spot. The color is of sufficient contrast to the much lighter concrete that it appears in plain view. Plaintiff testified that he believed the cable was difficult to see because it was a "dirty" color. However, it is immaterial that use of a brighter yellow cable (or perhaps just a cleaner one) would have resulted in even greater visibility. A "landowner's duty is not to be determined by questioning whether the [condition] could have been made perfect or foolproof[,] as the issue is whether the conditions that did exist were open and obvious to the person exercising reasonable care…." *Goodson v. Millennium & Copthorne Hotels*, 2015 WL 74271 at \*\*5 (S.D. Ohio Jan 6, 2015) (granting summary judgment based on open and obvious danger under Ohio law, internal quotation marks and citations omitted).

Plaintiff also speculates (without a clear recollection since he never saw it) that the cable may have been aligned on that fateful day with a straight-line pattern in the concrete. However, pictures taken immediately after the accident portray the cable lying in a curved or wavy line on top of the pavement rather than being somehow perfectly aligned with the straight-line pattern stamped into the pavement. Even if the cable had been more closely aligned with the parallel lines of the concrete, it is inconceivable (based on the overall length and general appearance of the cable) that it could have been so perfectly placed that it was "obscured" from a reasonable person's view. Thus, the Court concludes that: (1) the cable was unobstructed and easily "observable"; (2) the cable was of a heft and color that contrasted with the concrete

floor; (3) the cable was several feet in length; and (4) nothing blocked a reasonable patron's ability to observe the cable.

Ample case law supports the Court's conclusion. *See e.g., Headley v. Home Depot U.S.A., Inc.*, 2014 WL 3349592, 2014 U.S. Dist. LEXIS 92571 (N.D. Ohio July 8, 2014) (a garden hose laying on a light-colored concrete floor in a home improvement store's garden center was "open and obvious"). In *Headley*, the court contrasted the types of cases in which courts had found that a danger was not readily observable, from those cases in which courts had found similar dangers to be open and obvious:

> An ankle high pallet extending four to six inches into a busy grocery store aisle might not be readily observable, *Kintner,* 494 F.Supp.2d at 816, while a pile of boxes in the middle of a similar grocery store aisle would be. *Parsons v. Lawson Co.,* 57 Ohio App.3d 49, 51, 566 N.E.2d 698 (Ohio Ct.App.1989). An immediate step down in a bathroom obstructed by an inwardly opening door might not be readily observable, *Hissong,* 186 Ohio A pp.3d at 354, while an unobstructed 2.5" threshold step at a store entrance is readily observable. *Freeman v. Value City Dep't Store,* No.2010 CA 00034, 2010 WL 3766806, at *4 (Ohio Ct. App. Sept. 27, 2010). When the grass is of uniform height all around, campground patrons might not necessarily observe a hole in the ground, *Andler,* 670 F.3d at 721; however, bar patrons could readily observe a knee-high fire pit five feet in diameter at an outdoor bar. *Vanderbilt v. Pier 27, LLC,* 2 N.E.3d 966, 972 (Ohio Ct.App.2013). Weight limits on sample lawn chairs might not be an observable danger, *McElhaney v. Marc Glassman, Inc.,* 174 Ohio App.3d 387, 397, 882 N.E.2d 455 (Ohio Ct.App.2007), likewise, trampoline hazards arising only when multiple people simultaneously use a trampoline. *Lykins v. Fun Spot Trampolines,* 172 Ohio App.3d 226, 235–36, 874 N.E.2d 811 (Ohio Ct.App.2007). Generally, however, imperfections and obstructions in the middle of a floor or aisle, the most mundane of dangers, are readily observable. *See, e.g., Parsons,* 57 Ohio App.3d at 51, 566 N.E.2d 698 (pile of small boxes); *McGuire,* 118 Ohio App.3d at 498, 693 N.E.2d 807 (raised ceramic tile); *Davis v. Kmart Corp.,* No. 4:10CV2127, 2011 W L 4730523, at * 3–4 (N.D.Ohio Oct.7, 2011) (milk drips).

*Headley*, 2014 WL 3349592, at *4 (N.D.Ohio 2014).

The undersigned finds that the subject security cable, affixed to large power equipment and lying across light-colored concrete at the exterior front of a big box home improvement store without being in any way "hidden" from view, was readily observable. As such, Lowe's is entitled to judgment because it owed no duty to protect Plaintiff from this open and obvious danger. *Accord, Zitron v. Sweep-A-Lot*, 2010 WL 235803 (Ohio App. 2010) (water supply hose being used to clean sidewalk in plain sight and easily observable); *Kieffer v. BP OIL Co.*, 2009 WL 10715778 (N.D. Ohio June 30, 2009) (gasoline hose at a gas station laying on the sidewalk was unobscured and readily discoverable). Plaintiff's subjective perception that the cable was "kind of the same color as the concrete" is insufficient to create a genuine issue of material fact because the record flatly contradicts his testimony that the cable was not readily observable. (*Compare* Doc. 13-1 at 76: 4-5 with Exs. A and B). Even Plaintiff testified that if he had looked at the ground prior to tripping, he would have seen the cable. (*Id.* at 78: 21-23 and 79:14-15).

### B. No Attendant Circumstances Existed

Plaintiff's second argument is that the exception of "attendant circumstances" precludes application of the doctrine. Again, Plaintiff's argument fails to persuade.

> Like an open-and-obvious danger, there is no precise definition for "attendant circumstances." Nonetheless, "they generally include 'any distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time.'" *McGuire*, 118 Ohio App. 3d at 499, 693 N.E.2d 807 (quoting *France v. Parliament Park Townhomes*, 1994 WL 151658, *2, 1994 Ohio App. LEXIS 1793, *6 (Ohio Ct. App. 2nd Dist. Apr. 27, 1994) ). A plaintiff relying on attendant circumstances must point to conditions that are different than those ordinarily encountered by invitees to an establishment like that operated by the storeowner in question. *See Cooper*, 2007 WL 3380468 at *4, 2007 Ohio App. LEXIS

12

> 5337 at *10; *McConnell v. Margello*, 2007 WL 2729429, *5–6, 2007 Ohio App. LEXIS 4315, *14 (Ohio Ct. App. 10th Dist. Sept. 20, 2007).

*Kieffer v. BP Oil Company*, 2009 WL 10715778, at *7 (N.D. Ohio 2009). "An individual's particular sensibilities do not play a role in determining whether attendant circumstances make the individual unable to appreciate the open and obvious nature of the danger." *Ray* at ¶31. Attendant circumstances can reduce a reasonable pedestrian's duty to observe an open and obvious danger when such circumstances "taken together (1) divert the attention of the pedestrian, (2) significantly enhance the danger of the defect, and (3) contribute to the fall." *See Esterman v. Speedway, L.L.C.*, 2015 WL 929413 at *3 (Ohio App. Feb. 25, 2015) (quoting *Shepherd v. City of Cincinnati*, 168 Ohio App.3d 444, 452, 860 N.E.2d 808 (Ohio App. 2006)).

Plaintiff argues that like the plaintiff in *Klauss v. Glassman*, 2005 WL 678984, his attention was "directed at the traffic from the parking lot" which is something that Lowe's should have expected would occur with patrons who were picking up propane tanks. But context matters. The plaintiff in *Klauss* was shopping in the middle of a grocery store when he tripped and fell on a wooden pallet that had been placed in a main cross aisle directly behind a park bench, close to a three-foot-high display of merchandise as to which the plaintiff's attention had been diverted. The Ohio Court of Appeals found a genuine issue of fact to exist concerning "whether the placement of the bench and display created an unreasonably dangerous condition." *Id.* at *4. The court reasoned that the photographic evidence showed that the "view of the pallet was obscured by a bench on one side and a display of merchandise on the other," and that shoppers at the grocery store "normally have carts or baskets, are shopping for goods, and are looking at displays." In fact, most of the case law on which Plaintiff relies, in which "attendant

13

circumstances" were found to exist, involves the placement of displays in high-traffic areas in grocery stores.

Here, Plaintiff does not claim he was distracted by any type of fixed display, but only that his view of the cable was *momentarily* obscured and that he was soon thereafter distracted by traffic. He argues that attendant circumstances existed because his "view of the cable was blocked by the open propane cage door and power equipment" and that his fall was "instantaneous" when he walked around the cage door. Although a trial court will not generally weigh the testimony of witnesses, no reasonable factfinder could credit testimony that is flatly refuted by photographic evidence that shows the relative positions and distances between the objects. On the record presented, a reasonable patron objectively would have observed the power equipment and security cable while walking right next to it to retrieve a propane tank from a cage. In fact, Plaintiff had the opportunity to see the equipment and security cable at least four times before he walked around the open cage door and tripped and fell: (1) from the parking lot as he approached the store; (2) when he walked to set down his empty tank next to the cages with the equipment and cable immediately on his left; (3) when he walked back along the same path to enter the store with the equipment on his right; and (4) when he followed Stanforth back along the same path.

In contrast to shoppers maneuvering through the aisles of a grocery store with a shopping cart, a customer at Lowe's would expect to see large lawn equipment on display just outside the exterior of the store as well some form of security, such as the heavy gauge security cable that was present. Much like a hose at issue in *Headley v. Home Depot U.S.A., Inc.*, a "reasonable" Lowe's shopper might expect exterior

equipment to be secured in some fashion, and to walk with care around or near such equipment. *See id.*, 2014 WL 3349592 at *5 (rejecting plaintiffs' argument that liability arose because shoppers would be distracted by looking at merchandise, because "nothing about a garden hose in a Garden Center is unexpected, unpredictable, or unobservable").[9] Unlike the pallet unexpectedly encountered in the middle of a heavily traversed cross-aisle of a grocery store in *Klauss*, there were no similar attendant circumstances here.

The alleged proximity to the adjacent parking lot (with the possible distraction of nearby traffic) does not change the equation. The parking lot conditions did not differ from conditions ordinarily encountered by invitees to a home improvement store. Because the parking lot did not significantly enhance the danger of the cable, it does not constitute "attendant circumstances" in this case. *See generally Ludwigsen v. Lakeside Plaza L.L.C.*, 2014 WL 7014717 at *6 (Ohio App. Dec. 15, 2014).

Finally, Plaintiff argues that Lowe's should have anticipated that customers obtaining propane tanks might take the same short-cut between the lawnmowers to get to the parking lot. He points to testimony that the Store failed to adhere to its "best practices" by grouping the lawnmowers more closely together, to avoid customers walking between them, should be considered as evidence that Lowe's failed to minimize the tripping risk to its customers. However, he points to no evidence of any similar accidents. More importantly, this argument finds no support in Ohio law. A legal duty to warn of an open and obvious danger does not arise merely because a store secured its merchandise in a manner that did not conform with internal "best practices."

---

[9] Plaintiffs' broader reading of attendant circumstances would potentially eliminate the application of the open and obvious doctrine at retail stores, since virtually all falls at stores occur either near merchandise or parking lot traffic.

15

### C. Loss of Consortium Claim

Because the Court concludes that Lowe's is entitled to summary judgment on Paul's claims, his spouse's claim for loss of consortium fails as a matter of law. *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 92-93, 585 N.E.2d 384, 392 (1992).

### IV. Conclusion and Order

For the foregoing reasons, **IT IS ORDERED THAT** Defendant Lowe's motion for summary judgment (Doc. 15) be **GRANTED**. As no claims remain pending, this matter shall be **CLOSED** and T**ERMINATED** from the docket of this Court.

        *s/ Stephanie K. Bowman*
        Stephanie K. Bowman
        United States Magistrate Judge